IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01156-MSK-KLM

DAVID L. SMITH, and
M. JULIA HOOK,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss** [#9][1] (the "Motion").  Plaintiffs filed a Response [#11] in opposition to the Motion, and Defendant filed a Reply [#19].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court [#51].  The Motion is thus ripe for review.  Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion [#9] be **GRANTED** and that the Complaint [#1] be **DISMISSED without prejudice**.

At the outset, the Court must address Plaintiffs' request to have the Motion [#9] seeking dismissal converted into a motion for summary judgment.  *Response* [#11] at 2-3.  Plaintiffs assert that unless the Court excludes all exhibits attached to Defendant's Motion [#9], the Court must convert the motion into one for summary judgment and first allow

_____

[1] "[#9]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

discovery to proceed. *Id.* They state that the discovery they need to counter Defendant's

Motion consists of materials that "are in the exclusive knowledge, possession, custody and

control of the United States, so discovery from the United States will be required in order

for Plaintiffs to be able to respond to the United States' Motion for Summary Judgment."

*Id.* at 3.

The Court **denies** Plaintiffs' request to convert the Motion [#9] into a motion for

summary judgment for the following three reasons.  First, Plaintiffs failed to comply with

Local Rule 7.1C., which states that "[a] motion shall not be included in a response or reply

to the original motion.  A motion shall be made in a separate paper."  D.C.COLO.LCivR

7.1C.  Plaintiff's request may be denied on this basis alone.

Second, Plaintiffs do not provide the Court with any indication of the type of

*information* they need.  Instead, they provide the following description of the types of

*discovery* they need to combat the Motion:

> The following discovery from the United States will be required in order for
> Plaintiffs to be able to respond to the United States' Motion for Summary
> Judgment: (A) Full and complete answers to written discovery requests and
> production of all documents relevant to the affirmative defenses and other
> factual matters raised in the United States' Motion for Summary Judgment;
> and, (B) Depositions of Government officials with personal knowledge of the
> basis (if any) for the affirmative defenses and other factual matters raised in
> the United States' Motion for Summary Judgment.

*Pls.' Unsworn Decl. Under Penalty of Perjury* [#11-1] at 2.  These nebulous references to

discovery tools are insufficient to convince the Court that any specific discovery is

necessary before determination of the Motion.  The Court also notes that this is not the first

time that Defendant Smith, at least, has erred in this way.  In an appeal to the United States

Court of Appeals for the Federal Circuit (which the Court addresses in detail below),

Plaintiff Smith argued that he had been improperly denied discovery before the trial court determined whether it had jurisdiction.  *Smith v. United States*, 495 F. App'x 44, 49 (Fed. Cir. 2012).  The Federal Circuit affirmed the denial, stating:

> Here, the Court of Federal Claims properly denied Mr. Smith's request for discovery because it found that he failed to explain with sufficient specificity how discovery would help him overcome the various jurisdictional bars to his suit, which are outlined above, and thus, permitting discovery would likely have unnecessarily delayed resolution of the matter.  Mr. Smith did not identify facts that would support his claims for jurisdiction or explain how the documents he requested would show that the Court had jurisdiction.

*Id.* (footnote omitted).  The Court of Appeals further stated:

> Despite Mr. Smith's arguments to the contrary, even if the government's filing of exhibits along with its motion to dismiss had converted the motion to dismiss into a motion for summary judgment, that conversion would only entitle Mr. Smith to "a reasonable opportunity to present all the material that is pertinent to the motion," not to engage in a fishing expedition for information that would not establish jurisdiction.

*Id.* at 49 n.6 (citation omitted).  The Court finds that the Federal Circuit's reasoning is equally applicable.

Finally, when considering a motion to dismiss, the Court must normally disregard facts supported by documents other than the Complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, a Court may consider documents outside of the Complaint on a motion to dismiss in three instances.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir.2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third,

the Court may consider outside documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their Complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court has examined the documents submitted by the parties in connection with the Complaint, the Motion, and the Response and has determined that each of the documents cited to in this decision may appropriately be referenced by the Court in making its Recommendation on the pending Motion without converting the Motion to a motion for summary judgment.

## I. Background

Plaintiffs, who proceed in this matter pro se,[2] seek "the recovery of internal-revenue taxes erroneously or illegally assessed or collected, and penalties collected without authority, and sums that are excessive or were collected in a wrongful manner under internal-revenue laws . . . and to quiet title to real and personal property." *Compl.* [#1] at 1-2. Plaintiffs do not clearly articulate and separate their allegations and causes of action

---

[2] Generally, the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, Plaintiffs in this matter are attorneys: Plaintiff David L. Smith is licensed in the State of Texas and Plaintiff M. Julia Hook is licensed in the State of Colorado. *See, e.g.*, *Motion for Injunction* [#12] at 4. The Court has previously held that a plaintiff's "status as a licensed attorney reduces the deference to which he is entitled as a pro se litigant." *Baldwin v. United States*, No. 11-cv-02033-MSK-KLM, 2012 WL 7051296, at *1 n.1 (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)). Indeed, other courts have drawn a distinction between pro se attorneys and other pro se parties. *See, e.g., Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (finding district court did not abuse its discretion by denying special consideration to pro se practicing attorneys); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (holding that "pro se attorneys such as [plaintiffs] typically cannot claim the special consideration which the courts customarily grant to pro se parties"); *Godlove v. Bamberger, Foreman, Oswald, and Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of pro se applicants gently, but a pro se lawyer is entitled to no special consideration."); *Harbulak v. Suffolk Cnty.*, 654 F.2d 194, 198 (2d Cir. 1981) (finding that pro se attorney was not entitled to special consideration because plaintiff was a "practicing lawyer who had the means and the knowledge, or at least the ability to obtain the knowledge, to recognize" whether his claims were reasonable).

in the Complaint.  Defendants address each section of the Complaint (except for the first section, which is introductory and jurisdictional, and the last section, which is conclusory) as if each were a separate cause of action.  Plaintiffs do not contest this characterization of their claims in the Response.  Therefore, for ease of reference, the Court follows this format in the Recommendation and refers to Plaintiff's causes of action as Claims II-VII, corresponding with sections II-VII of the Complaint.

In connection with Claim II, Plaintiffs state that on January 19, 2010, they served the following "Protective Claim for Refund and/or Credit:"[3]

> Taxpayers David Lee Smith (Social Security No. [xxx-xx]-8123) and Mary Julia Hook (Social Security No. [xxx-xx]-3612) whose addresses are shown below hereby file a protective claim for refund and/or credit for tax years 1992, 1993, 1994, 1995, 1996, 2001, 2002, 2003, 2004, 2005 and 2006.
>
> Since late 2004 the taxpayers have paid the IRS almost $1 million in satisfaction of alleged deficiencies for income taxes, penalties and interest for tax years 1992-1996 and 2001-2006.  The amount paid exceeds the amount owed by a substantial amount, thus entitling the taxpayers to a refund or credit for the overpayment.
>
> The United States Tax Court has been requested to determine or redetermine the alleged deficiencies for income taxes, penalties and interest for tax years 1992-1996 and 2001-2006, and to determine the amount of any overpayment.  See *David Lee Smith and Mary Julia Hook v. Commissioner of Internal Revenue*, No. 022223-07; *David L. Smith v. Commissioner of Internal Revenue*, No. 027995-09.  The taxpayers' claim for refund and/or credit is contingent on the Tax Court's determinations or redeterminations in these cases.
>
> A copy of this Protective Claim for Refund and/or Credit is being hand delivered on January 19, 2010 to Miles B. Fuller, Attorney (SB/SE), 1244 Speer Blvd., Suite 500, Denver, CO 80204, Telephone: (720) 956-4015.

---

[3] Although the latter part of the document identifies the persons to whom the document was copied, Plaintiffs provide no allegation regarding the person or persons on whom the document was served.

> A copy of this Protective Claim for Refund and/or Credit is being sent by Certified Mail on January 19, 2010 to Department of the Treasury, Internal Revenue Service Center, Fresno, CA 93888-0422.

*Compl.* [#1] at 2-3.   Subsequently, the United States Tax Court, the United States

Bankruptcy Court for the District of Colorado, and the United States Court of Federal

Claims each declined to exercise jurisdiction to hear and/or decide Plaintiffs' claim for

refund and/or credit for income taxes, penalties and interest for tax years 1992-1996 and

2001-2006.  *Id.* at 3.

In connection with Claim III, Plaintiffs state that on October 25, 2012, they served

the IRS with the following "Request for Certificates of Release of Federal Tax Liens:"

> The Taxpayers, David Lee Smith (SSN [xxx-xx]-8123) and Mary Julia Hook (SSN [xxx-xx]-3612), hereby request certificates of release of the following federal tax liens: (1) Notice of Federal Tax Lien dated April 9, 2004 (recorded May 12, 2004), Serial Number 167338204, for "Unpaid Balance of Assessment" of $438,177.56, for Tax Years 1993-1996; (2) Notice of Federal Tax Lien dated April 9, 2004 (recorded May 12, 2004), Serial Number 167338504, for "Unpaid Balance of Assessment" of $438,177.56, for Tax Years 1993-1996; (3) Notice of Federal Tax Lien dated April 12, 2004 (recorded May 5, 2004), Serial Number 167509204, for "Unpaid Balance of Assessment" of $438,177.56, for Tax Years 1993-1996; (4) Notice of Federal Tax Lien dated December 1, 2005 (recorded December 14, 2005), Serial Number 262013605, for "Unpaid Balance of Assessment" of $386,677.12, for Tax Years 1993-1996; (5) Notice of Federal Tax Lien dated December 16, 2005 (recorded January 5, 2006), Serial Number 264464105, for "Unpaid Balance of Assessment" of $386,635.68, for Tax Years 1993-1996; (6) Notice of Federal Tax Lien dated December 4, 2007 (recorded December 11, 2007), Serial Number 407453007, for "Unpaid Balance of Assessment" of $2,527.80, for Tax Year 2006; (7) Notice of Federal Tax Lien dated January 16, 2008 (recorded January 28, 2008), Serial Number 415727008, for "Unpaid Balance of Assessment" of $369.85, for Tax Year 2004; (8) Notice of Federal Tax Lien dated September 9, 2011 (recorded September 20, 2011), Serial Number 813639911, for "Unpaid Balance of Assessment" of $428,266.29, for Tax Years 2001-2005; (9) Notice of Federal Tax Lien dated December 8, 2011 (recorded December 21, 2011), Serial Number 835127711, for "Unpaid Balance of Assessment" of $454,524.16, for Tax Years 2001-2005 and 2007.  Copies of the foregoing Notices are attached hereto as Exhibits 1-9, respectively [attached hereto as Exhibits C-K,

respectively].

Under Section 6325(a)(1) of the Internal Revenue Code, the Secretary of the Treasury is required to "issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which . . . the Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable."

As stated in Taxpayer Hook's April 12, 2011 "Declaration Under Penalty of Perjury," a copy of which is attached hereto as Exhibit 10, the Taxpayers have paid the IRS almost $1,000,000 ($946,500 by the Taxpayers' calculation) in full satisfaction of alleged taxes, penalties and interest for tax years 1992-1996 and 2001-2006. The amount paid exceeds the amount owed by a substantial amount, thus entitling the Taxpayers to a refund/credit for the overpayment, including any interest allowed thereon, under Section 6402(a) of the Internal Revenue Code. Although documentary proof of full payment/overpayment (including any IRS receipts) is exclusively in the possession, custody and control of the IRS, the Taxpayers have given testimony in court proceedings involving the IRS and/or the United States demonstrating that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied by full payment, entitling the Taxpayers to a full satisfaction finding by the Secretary, and certificates of release of the nine above-listed federal tax liens.

The taxes imposed for tax years 1993-1996 (as to the assessments made in 2004) and 2001-2006 were not assessed until more than three years after the returns for those years were filed, meaning that Section 6501(a) of the Internal Revenue Code precludes the beginning of any proceeding in court for the collection of such taxes. As a result, any liability for the amounts assessed, together with all interest in respect thereof, has become legally unenforceable under Section 6325(a)(1) of the Internal Revenue Code. Furthermore, even assuming that the assessments were made within the three-year limitations period of Section 6501(a) of the Internal Revenue Code, any liability for tax years 1993-1996 has become unenforceable under Section 6502(a) by reason of lapse of time (10 years); and, therefore, the federal tax liens that purport to secure such liability should be released.

If you need any additional information, please feel free to contact Taxpayer Smith at (303) 863-8120 between the hours of 10 a.m. and 3 p.m. (Mountain Time) Tuesday through Thursday. Please leave a voicemail message if he is not available when you call, and he will get back to you as soon as he can. The Taxpayers request expedited processing of their Request for Certificates of Release of Federal Tax Liens.

*Id.* at 3-6.  As of May 1, 2013, the United States had not acted on Plaintiffs' Request for

Certificates of Release of Federal Tax Liens.  *Id.* at 6.

In connection with Claim IV, Plaintiffs state that on October 25, 2012, they served

the IRS with the following "Request for Return of Levied/Seized Property:"

> The Taxpayers, David Lee Smith (SSN [xxx-xx]-8123) and Mary Julia Hook (SSN [xxx-xx]-3612), hereby request the return of the real and personal property (including money) as described in Taxpayer Hook's April 12, 2011 "Declaration Under Penalty of Perjury," a copy of which is attached hereto as Exhibit 1.  To the best of the Taxpayers' knowledge, this real and personal property (including money) was levied on/seized by the IRS Office in Denver, Colorado on dates unknown to the Taxpayers.
>
> Section 6343(d) of the Internal Revenue Code provides in relevant part as follows:
>
> If—
>
> (1) any property has been levied upon, and
>
> (2) the Secretary determines that—
>
> (A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,
>
> (B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,
>
> (C) the return of such property will facilitate the collection of the tax liability, or
>
> (D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States,
>
> the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

The levies on/seizures of the Taxpayers' real and personal property (including money) were premature.  As stated in Taxpayer Hook's April 12, 2011 "Declaration Under Penalty of Perjury," the Taxpayers have paid the IRS almost $1,000,000 ($946,500 by the Taxpayers' calculation) in full satisfaction of alleged taxes, penalties and interest for tax years 1992-1996 and 2001-2006.  The amount paid exceeds the amount owed by a substantial amount, thus entitling the Taxpayers to a refund/credit for the overpayment, including any interest allowed thereon, under Section 6402(a) of the Internal Revenue Code.  Although documentary proof of full payment/overpayment (including any IRS receipts) is exclusively in the possession, custody and control of the IRS, the Taxpayers have given testimony in court proceedings involving the IRS and/or the United States demonstrating that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied by full payment, entitling the Taxpayers to a return of the specific property levied upon, an amount of money equal to the amount of money levied upon and/or an amount of money received by the United States from a sale of such property, as provided in Section 6343(b) of the Internal Revenue Code.

The levies on/seizures of such property were not in accordance with Sections 6331, 6334, 6335, 6337, 6342 and 6343 of the Internal Revenue Code and the administrative procedures thereunder, entitling the Taxpayers to a return of the specific property levied upon, an amount of money equal to the amount of money levied upon, and/or an amount of money received by the United States from a sale of such property, as provided in Section 6343(b) of the Internal Revenue Code.

As part of Taxpayer Hook's 2008 chapter 11 bankruptcy case, she entered into an agreement with the IRS to satisfy the tax liability for which the levies on/seizures of such property had been imposed by means of installment and other payments in accordance with the agreement.

The return of such real and personal property (including money) would facilitate the IRS's collection of any remaining tax liability because it would provide the Taxpayers with the money/property to pay any remaining tax liability.

The return of such real and personal property (including money) would be in the best interests of the Taxpayers (as determined by the National Taxpayer Advocate) and the United States.

If you need any additional information, please feel free to contact Taxpayer Smith at (303) 863-8120 between the hours of 10 a.m. and 3 p.m. (Mountain Time) Tuesday through Thursday.  Please leave a voicemail message if he is not available when you call, and he will get back to you as soon as he can.

The Taxpayers request expedited processing of their Request for Return of Levied/Seized Property.

*Id.* at 7-10.  As of May 1, 2013, the United States had not acted on Plaintiffs' Request for

Return of Levied/Seized Property.  *Id.* at 10.

In connection with Claim V, Plaintiffs state that on October 25, 2012, Plaintiff Smith

served the IRS with the following "Request for a Release of the Continuing Levy on his

Social Security Payments, and Notice of the Release:"

> The Taxpayer, David Lee Smith (SSN [xxx-xx]-8123), hereby requests a release of the continuing levy on his Social Security payments in effect since 2007, and notice of the release.  To the best of the Taxpayer's knowledge, this levy was imposed by the IRS Office in Denver, Colorado for alleged deficiencies in income taxes, penalties and interest due for tax years 1992-1996 and 2001-2006.  The exact date of this levy is unknown to the Taxpayer.

> Under Section 6343(a) of the Internal Revenue Code, the Secretary of the Treasury is required to "release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if . . . the liability for which such levy was made is satisfied . . . ."

> In addition to the fact that levy is being made on 100% of the Taxpayer's Social Security payments—exempt property under Section 6334 of the Internal Revenue Code—in violation of the 15% rule stated in Section 6331(h)(1) of the Internal Revenue Code, the liability for which the levy was made has been fully satisfied by full payment, as more fully set forth in the Taxpayer's Request for Return of Levied/Seized Property and the Taxpayer's Request for Certificates of Release of Federal Tax Liens which are being submitted for consideration simultaneously with this Request to Release Levy and Notice of Release.  For your convenience, copies of both of the referenced Requests are enclosed.

> Under these circumstances, the Taxpayer is entitled to a release of the continuing levy on his Social Security payments, and prompt notice of such release.

> If you need any additional information, please feel free to contact the Taxpayer at (303) 863-8120 between the hours of 10 a.m. and 3 p.m. (Mountain Time) Tuesday through Thursday.  Please leave a voicemail

message if he is not available when you call, and he will get back to you as soon as he can. The Taxpayer requests expedited processing of his Request to Release Levy and Notice of Release.

*Id.* at 10-11. As of May 1, 2013, the United States had not acted on Defendant Smith's Request for a Release of the Continuing Levy on his Social Security Payments, and Notice of the Release. *Id.* at 11.

In connection with Claim VI, Plaintiffs state that on October 29, 2012, they served the IRS with the following "Claim for Refund of $362,675 for Tax Years 1992-1996 and 2001-2005:"

The Taxpayers, David Lee Smith (SSN [xxx-xx]-8123) and Mary Julia Hook (SSN [xxx-xx]-3612), hereby claim a refund of $362,675 for tax years 1992-1996 and 2001-2005, as more fully set forth on the Forms 1040X enclosed herewith.

The following documents are also enclosed herewith: (1) the Taxpayers' Protective Claim for Refund dated January 19, 2010; and (2) Taxpayer Hook's Declaration Under Penalty of Perjury dated April 12, 2011. These documents demonstrate the amounts paid/overpaid by the Taxpayers for tax years 1992-1996 and 2001-2006, as well as the efforts made by the Taxpayers to obtain a refund/credit in the United States Tax Court and in the United States Bankruptcy Court for the District of Colorado—both of which refused to determine the amount of credit/refund to which the Taxpayers are entitled.

If you need any additional information, please feel free to contact Taxpayer Smith at (303) 863-8120 between the hours of 10 a.m. and 3 p.m. (Mountain Time) Tuesday through Thursday. Please leave a voicemail message if he is not available when you call, and he will get back to you as soon as he can. The Taxpayers request expedited processing of their claim for refund of $362,675 for tax years 1992-1996 and 2001-2006.

*Id.* at 12. As of May 1, 2013, the United States had not acted on Plaintiffs' Claim for Refund of $362,675 for Tax Years 1992-1996 and 2001-2005. *Id.* at 13.

In connection with Claim VII, Plaintiffs state that on October 29, 2012, they served the IRS with their "Claim for Refund/Credit in an Unknown Amount for Penalties and

-11-

Interest for Tax Years 1992-1996 and 2001-2006, and Request for Abatement of Penalties

and Interest for These Tax Years:"

> The Taxpayers, David Lee Smith (SSN [xxx-xx]-8123) and Mary Julia Hook (SSN [xxx-xx]-3612), hereby claim a refund/credit in an unknown amount for penalties and interest for tax years 1992-1996 and 2001-2006, and request abatement of penalties and interest for these tax years, as more fully set forth on the Forms 843 enclosed herewith.

> The following documents are also enclosed herewith: (1) the Taxpayers' Protective Claim for Refund dated January 19, 2010; and (2) Taxpayer Hook's Declaration Under Penalty of Perjury dated April 12, 2011. These documents demonstrate the amounts (including penalties and interest) paid/overpaid by the Taxpayers for tax years 1992-1996 and 2001-2006, as well as the efforts made by the Taxpayers to obtain a refund/credit in the United States Tax Court and in the United States Bankruptcy Court for the District of Colorado—both of which refused to determine the amount of credit/refund (including penalties and interest) to which the Taxpayers are entitled.

> If you need any additional information, please feel free to contact Taxpayer Smith at (303) 863-8120 between the hours of 10 a.m. and 3 p.m. (Mountain Time) Tuesday through Thursday. Please leave a voicemail message if he is not available when you call, and he will get back to you as soon as he can. The Taxpayers request expedited processing of their claim for refund/credit in an unknown amount for penalties and interest for tax years 1992-1996 and 2001-2006, as well as their request for abatement of penalties and interest for these tax years.

*Id.* at 13-14. As of May 1, 2013, the United States had not acted on Plaintiffs' Claim for

Refund/Credit in an Unknown Amount for Penalties and Interest for Tax Years 1992-1996

and 2001-2006, and Request for Abatement of Penalties and Interest for These Tax Years.

*Id.* at 14.

In closing, Plaintiffs assert that "[d]ue to the actions and inactions of the United

States described in the foregoing paragraphs," a cloud was placed on titles to real and

personal property owned by Plaintiff Smith and/or Plaintiff Hook. *Id.* They seek to have the

titles to their real and personal property quieted in accordance with 28 U.S.C. § 2410.[4]  *Id.*

Plaintiffs seek the following relief: (1) "[a] credit and/or refund of almost $1,000,000 ($964,500 by [Plaintiffs'] calculation) for payment/overpayment of taxes, penalties and interest for tax years 1992-1996 and 2001-1006;" (2) "[a]batement of penalties and interest for tax years 1992-1996 and 2001-2006;" (3) "[t]he actual, direct economic damages sustained by [Plaintiffs'] which, but for the failure or refusal of the United States to release the federal tax liens, would not have been sustained, plus the costs of the action;" (4) "[t]he release of all federal tax liens;" (5) "[t]he return of all levied/seized property;" (6) "[t]he release of the continuing levy on [Plaintiff David L.] Smith's Social Security payments in effect since 2007;" (7) "[a]n order quieting title to all real and personal property owned by [Plaintiffs];" (8) "[i]nterest, costs and reasonable attorneys' fees and expenses as provided by law;" and (9) "[s]uch other and further legal and equitable relief as may be just under the circumstances."  *Id.* at 15-16.

## II.  Standard of Review

### A.  Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.

---

[4] Plaintiffs aver that the information they provided in Claim III sets forth the nature of the interest or lien of the United States, as well as the other information required by 28 U.S.C. § 2410(b).  *Compl.* [#1] at 14-15.

*F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.      Fed. R. Civ. P. 12(b)(6)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ][has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant[s] fair notice of what the ... claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. Analysis

### A.    Jurisdictional Statutes

Defendant argues that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction on a variety of grounds.  First, Defendant argues that Plaintiffs have not established that the United States has waived sovereign immunity as to their claims, and the Court therefore lacks subject matter jurisdiction over the case.  In the Complaint, Plaintiffs assert that jurisdiction is based on three separate statutes: 28 U.S.C. §§ 1331, 1340, and 1346.  At the outset, the Court notes that the party asserting jurisdiction has the burden of overcoming a sovereign immunity defense.  *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).

Regarding section 1331, the Tenth Circuit Court of Appeals has repeatedly held that "[w]hile 28 U.S.C. § 1331 grants [federal] court jurisdiction over all 'civil actions arising under the Constitution, laws or treaties of the United States,' it does not independently waive the Government's sovereign immunity; § 1331 will only confer subject matter jurisdiction where some other statute provides such a waiver."  *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.2 (10th Cir. 2010) (quoting *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006)).  Thus, section 1331 alone does not confer subject matter jurisdiction over Plaintiffs' claims.

Regarding section 1340, this statute states that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue."  However, this statute does not constitute a waiver of sovereign immunity either, and thus it does not confer subject matter jurisdiction over Plaintiffs' claims in the absence of some other statute providing such a waiver.  *Guthrie v. Sawyer*, 970 F.2d 733, 735 (10th Cir. 1992) (citing *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991)).

Regarding section 1346, this statute both establishes federal court subject matter jurisdiction and waives sovereign immunity in limited circumstances.  *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011) (citing *United States v. Williams*, 514 U.S. 527, 530 (1995)).  Specifically, federal court subject matter jurisdiction is established over:

> Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . . .

28 U.S.C. § 1346(a)(1).  As outlined in the Background section above, Plaintiffs in this matter assert precisely the types of claims that fall within this statute.  Accordingly, the Court finds that Plaintiffs have properly asserted a statutory basis for the Court's subject matter jurisdiction which waives Defendant's sovereign immunity.

**B.     Claims II, VI, and VII**

However, this does not end the Court's jurisdictional inquiry.  Although section 1346 confers subject matter jurisdiction and waives sovereign immunity as a whole, Plaintiffs must meet other jurisdictional requirements regarding each of their specific claims. Regarding Claims II, VI, and VII, Defendant argues that Plaintiffs "have failed to satisfy the other prerequisites for maintaining a refund action."  *Motion* [#9] at 13.

Plaintiffs have a long history of litigating their tax obligations in the United States Tax Court, the Court of Federal Claims, the United States Court of Appeals for the Federal Circuit, the United States Bankruptcy Court for the District of Colorado, the United States District Court for the District of Colorado, and the United States Court of Appeals for the Tenth Circuit.  In 2011 the Court of Federal Claims determined not only that it did not have

subject matter jurisdiction over Plaintiff Smith's claims, (the same claims that he reasserts

here), but that no United States District Court would have subject matter jurisdiction over

the claims either, and thus Plaintiff Smith's request to transfer his case from that court to

a district court was denied. *See Smith v. United States*, 101 Fed. Cl. 474, 481 (2011).  The

United States Court of Appeals for the Federal Circuit later affirmed both rulings.  *Smith v.

United States*, 495 F. App'x 44, 50 (Fed. Cir. 2012).

Although Defendant raises the issue of res judicata, *see Motion* [#9] at 21-23, the

Court must first address subject matter jurisdiction over the case.  *See Herrara v. Alliant

Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo.

Mar. 21, 2012) (stating that issue of subject matter jurisdiction "must be resolved before the

court may address other issues presented in the motion").  Thus, because the Court here

considers whether it has subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), it

does not consider whether the rulings of the Court of Federal Claims and the Court of

Appeals for the Federal Circuit are res judicata under Fed. R. Civ. P. 12(b)(6).  *See Simon

v. Taylor*, No. CIV 12-0096 JB/WDS, 2013 WL 5934420, at *26 (D.N.M. Sept. 26, 2013)

(citing *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (acknowledging that res

judicata, an affirmative defense, may be raised by a Rule 12(b)(6) motion to dismiss)).

However, the Court finds that the Court of Federal Claims and the Court of Appeals

for the Federal Circuit's jurisdictional analysis is persuasive.[5]  The Court need not again go

through the entire, thorough analysis presented by those courts.  However, the Court notes

the following.  First, both the Federal Claims case and the present case involve Plaintiffs'

---

[5]  Although that case involved only Plaintiff Smith, the analysis applies equally to Plaintiff
Hook's claims, as demonstrated below.

quest to obtain a "redetermination of income tax deficiencies and additions to tax asserted against them for tax years 1992 to 1996 arising from joint returns filed for those years." *Smith*, 495 F. App'x at 46; *Compl.* [#1] at 2, 12,13.  Second, both cases also seek "to recover taxes alleged to have been erroneously assessed or collected for tax years" 2000 to 2006.  *Id.*  These issues are the bases for Plaintiffs' Claims II, VI, and VII in this case.  *See id.*  Third, regarding the 1992-1996 and 2001-2005 tax years, the Court of Appeals for the Federal Circuit summarized and analyzed the jurisdictional issues as follows:

> With regard to tax disputes, 28 U.S.C. § 1346(a)(1) provides for concurrent jurisdiction in the federal district courts and the Court of Federal Claims with respect to "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . under the internal-revenue laws . . . ."  However, § 6512(a) bars a suit for refund involving a tax year for which a Tax Court petition contesting a deficiency determination has been filed.  *See Solitron Devices v. United States*, 862 F.2d 846, 848 (11th Cir. 1989) ("A bar to the exercise of jurisdiction by the district court over a tax case is triggered when the taxpayer files a petition with the Tax Court.").  Here, the Court of Federal Claims correctly found that § 6512(a) precluded it from exercising jurisdiction because Mr. Smith had previously filed Tax Court petitions seeking redetermination of the same liabilities.

*Smith*, 495 F. App'x at 47-48 (footnote omitted).  Here, as well, the Court finds that Plaintiffs' liabilities for the 1992-1996 and 2001-2005 tax years were previously litigated and assessed in Tax Court.  *See Def.'s Exs. 1, 2, & 3* [#10-1, #10-2, #10-3].  The Court agrees with the Federal Circuit that it therefore has no jurisdiction over Plaintiffs' claims regarding the taxes assessed for these tax years.

Fourth, regarding the 2006 tax year, the Federal Circuit summarized and analyzed the jurisdictional issues as follows:

> When a taxpayer is assessed with an income tax deficiency, he may challenge that assessment in one of two ways.  One way is to pay the tax, request a refund from the IRS, and then file a refund suit in the Court of

Federal Claims or in a district court.  I.R.C. § 7422(a).  The Court of Federal Claims lacks jurisdiction over a tax refund suit unless the assessment has been fully paid.  *See Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002).  In the alternative, the taxpayer can file a petition with the Tax Court without paying the assessment.  *See Flora v. United States*, 362 U.S. 145, 163 (1960).  With certain exceptions, if a taxpayer properly files a petition with the Tax Court, he cannot later file a claim in the Court of Federal Claims or in a district court to obtain a credit or refund for the same taxable year.[6]  I.R.C. § 6512(a).

Here, the Court of Federal Claims properly dismissed Mr. Smith's claim for lack of subject matter jurisdiction because the government submitted evidence demonstrating that Mr. Smith failed to satisfy the full payment rule. Mr. Smith offered no documentary evidence, such as a receipt or cancelled check proving that he had fully satisfied the assessment, and his self-serving speculation or testimony in that regard is insufficient to satisfy his burden to establish jurisdiction over his claims by preponderant evidence.  The Tax Court found that Mr. Smith's arguments lacked merit and that he had failed

---

[6]  The exceptions referenced by the Federal Circuit are as follows:

(1) As to overpayments determined by a decision of the Tax Court which has become final, and

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final, and

(3) As to any amount collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive, and

(4) As to overpayments attributable to partnership items, in accordance with subchapter C of chapter 63, and

(5) As to any amount collected within the period during which the Secretary is prohibited from making the assessment or from collecting by levy or through a proceeding in court under the provisions of section 6213(a), and

(6) As to overpayments the Secretary is authorized to refund or credit pending appeal as provided in subsection (b).

26 U.S.C. § 6512(a)(1)(2).  Plaintiffs do not cite to any of these exceptions either in the Complaint [#1] or in the Response [#11], and there appear to be no nonconclusory allegations supporting the application of any of these exceptions to this case.

to show that the IRS records demonstrating the failure were incorrect. *Smith*, 495 F. App'x at 48.  Here, as well, the Court finds that Plaintiffs have failed to show that the assessment shown on the IRS records for the 2006 tax year has been paid in full. *Def.'s Exs. 11 & 22* [#10-11, #10-22].  The Court therefore agrees with the Federal Court that it lacks jurisdiction over Plaintiffs' claims regarding the taxes assessed for 2006.

Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' Claims II, VI, and VII.  The Court therefore **recommends** that these three Claims be **dismissed without prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## C.    Claims IV and V

Claims IV and V both assert that the IRS has failed to return and release levied property. *Compl.* [#1] at 7-11.  However, as Defendant argues, "[n]o cause of action exists relating to the release of a levy."[7]  *Motion* [#9] at 20.  Under 26 U.S.C. § 7421(a), "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any [district] court . . . ."  *Souther v. Mihlbacher*, 701 F.2d 131, 131-32 (10th Cir. 1983) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962)).  In these two claims, Plaintiffs seek to enjoin the collection of taxes assessed against them by the IRS. *Compl.* [#1] at 7-11.  They may only

---

[7]  The exception to this rule is inapplicable here, i.e., a person *other than the taxpayer* may file a wrongful levy suit if his interest in the levied property is superior to that of the United States. 26 U.S.C. § 7426(a)(1).

maintain these claims if they properly allege that: "1) under no circumstances could the government establish its claim to the asserted tax; and 2) irreparable injury would otherwise occur." *Souther*, 701 F.2d at 132 (citing *Bob Jones Univ.*, 416 U.S. at 737; *Enochs*, 370 U.S. at 6-8). However, Plaintiffs have not demonstrated that the United States cannot succeed on the merits of its claim for taxes against them. Although Plaintiffs provide numerous conclusory allegations that the taxes were "erroneously or illegally assessed or collected, and penalties collected without authority, and sums that are excessive or were collected in a wrongful manner," they have failed to translate these general averments into specific facts evidencing that the government cannot establish its claim to the taxes. *See Compl.* [#1] at 1. Further, even if, arguendo, Plaintiffs properly alleged that the government cannot prove its claim to the asserted taxes, Plaintiffs would still fail to meet the second prong of the test by demonstrating that irreparable injury would otherwise occur. There is nothing in the Complaint indicating that Plaintiffs cannot pay the assessed tax that is the subject of these levies and then file a refund lawsuit. *Souther*, 701 F.2d at 132 (citing 28 U.S.C. § 1346(a)(1); 26 U.S.C. § 7422).

Accordingly, the Court **recommends** that Claims IV and V be **dismissed without prejudice** for lack of subject matter jurisdiction. *See Brereton*, 434 F.3d at 1216-17.

## D.    Claim III

In Claim III, Plaintiffs assert that the IRS has failed to release its tax liens. *Compl.* [#1] at 3-6. Defendant argues that this claim fails jurisdictionally because Plaintiffs failed to exhaust their administrative remedies. *Motion* [#9] at 18-19. Defendant points out, however, that Tenth Circuit case law has not established whether failure to exhaust

administrative remedies under the circumstances of this case is jurisdictional.  *Motion* [#9] at 19 n.3.  The clear weight of authority from other Circuits that have considered the issue in this context is that exhaustion is mandatory but not jurisdictional.  *See id.* (citing *Hoogerheide v. IRS*, 637 F.3d 634 (6th Cir. 2011); *Galvez v. IRS*, 48 F. App'x 880 (11th Cir. 2011); *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011)).  The parties have not directed the Court's attention to, and the Court has not discovered on its own, any Circuit precedent holding otherwise.  Thus, based on this clear weight of authority, the Court here assumes that exhaustion is mandatory but not jurisdictional.

As noted earlier, on a Fed. R. Civ. P. 12(b)(6) motion, the Court may consider documents that are both central to Plaintiffs' claims and to which Plaintiffs refer in their Complaint.  *GFF Corp.*, 130 F.3d at 1384.  Here, the document at issue regarding administrative exhaustion is not only referred to and cited verbatim by Plaintiffs in the Complaint itself, but a copy of it is attached to the Complaint due to its centrality to Plaintiffs' Claim III.  Thus, pursuant to *GFF Corporation*, the Court finds that it may examine this document in determining the viability of Claim III.

Under 26 U.S.C. § 7432(d), a judgment for damages shall not be awarded unless the plaintiffs exhaust administrative remedies in connection with their request that the IRS release liens against them.  *See Carter v. United States*, 389 F. App'x 809, 813 (10th Cir. 2010).  Their request to release tax liens must, however, detail:

> (i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;
> (ii) A copy of the notice of federal tax lien affecting the taxpayer's property, if available;
> (iii) A copy of the request for release of lien made in accordance with § 401.6325–1(f) of the Code of Federal Regulations, if applicable;

(iv) The grounds, in reasonable detail, for the claim (include copies of any available substantiating documentation or correspondence with the Internal Revenue Service);
(v) A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);
(vi) The dollar amount of the claim, including any damages that have not yet been incurred but that are reasonably foreseeable (include copies of any available substantiating documentation or evidence); and
(vii) The signature of the taxpayer or duly authorized representative.  For purposes of this paragraph, a duly authorized representative is any attorney, certified public accountant, enrolled actuary, or any other person permitted to represent the taxpayer before the Internal Revenue Service who is not disbarred or suspended from practice before the Internal Revenue Service and who has a written power of attorney executed by the taxpayer.

26 C.F.R. § 301.7432-1(f)(2).

Here, Defendant argues that Plaintiffs failed to specify the dollar amount of the claim.[8] *Motion* [#9] at 19.  The Court agrees.  Plaintiffs conclusorily state that the "amount paid exceeds the amount owed by a substantial amount" and that "documentary proof of full payment/overpayment . . . is exclusively in the possession, custody and control of the IRS."  *Compl.* [#9] at 5.  But Plaintiffs fail to offer any more specific statement or evidence regarding the alleged overpayment, and instead contradict themselves by alleging that they, in fact, have continuing liability for unpaid taxes: "The return of such real and personal property (including money) would facilitate the IRS's collection of any remaining tax liability because it would provide the Taxpayers with the money/property to pay any remaining tax liability."  *Id.* at 9.  In light of these vague and contradictory assertions, the Court finds that Plaintiffs have not sufficiently stated the dollar amount of their claim.

---

[8] Defendant also argues that Plaintiffs failed to include a copy of or references to any prior administrative request for release of the liens under 26 U.S.C. § 6325.  *Motion* [#9] at 19.  The Court cannot resolve this contention without an affirmative showing that Plaintiffs made a prior request for release of the liens.  Defendant has failed to make such a showing, so the argument is ignored.

The United States Supreme Court has addressed the necessity of full exhaustion of administrative remedies in other contexts.  The well-established rationale for requiring administrative exhaustion is applicable here.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  This Court has described the doctrine as follows: "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice."  Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (internal citations omitted).  Plaintiffs have failed to properly exhaust this claim.  Accordingly, the Court finds that Plaintiffs have failed to exhaust their administrative remedies and that Claim III must be **DISMISSED without prejudice**.  *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

## IV.  Conclusion

Accordingly,

IT IS HEREBY **RECOMMENDED** that the Motion [#9] be **GRANTED** and that the Complaint [#1] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 6, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge